# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TRACEY TERRELL GRADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18cv777 |
| | ) | |
| KRISTIE B. BRAYBOY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion for Judgment on the Pleadings" (Docket Entry 18) (the "Motion")[1] filed by Kristie Brayboy, Renee Cordeiro, Kenneth E. Lassiter, Tammy S. Lockamy, and Barry Smith (collectively, the "Defendants"). For the reasons that follow, the Court should grant the Motion.

## BACKGROUND

Pursuant to 42 U.S.C. § 1983, Tracey Terrell Grady (the "Plaintiff"), an inmate with the North Carolina Department of Public Safety (the "NC DPS"), commenced this action against Defendants, various NC DPS employees, for their alleged violations of his constitutional rights during his incarceration at Hoke Correctional Institution (the "Hoke C.I."). (See Docket Entry 1

---

1  For legibility reasons, this Opinion uses standardized capitalization in all quotations from the parties' materials.

(the "Complaint") at 1-8.)[2]  According to the Complaint, Plaintiff filed grievance number "4320-2018-IBK-07541" (the "Grievance") with the NC DPS "concerning the facts relating to []his [C]omplaint." (Id. at 8.)  The Complaint further states that Plaintiff appealed the Grievance "to Step Two, [but] staff are illegally trying to den[y Plaintiff] the grievance process."  (Id.)  Plaintiff elaborated that he "wrote many grievances," which he attached to his Complaint, which the grievance examiner "at Hoke C.I." rejected.  (Id.)  Per Plaintiff, "one is still in the appeal stage at this time."  (Id.)

Plaintiff attached multiple grievances to his Complaint.  (See generally Docket Entry 1-1.)  Although the Grievance itself does not appear (see generally id.), the attachments contain the NC DPS Step One and Step Two responses to the Grievance (see id. at 1-2).[3]  These materials reflect that the NC DPS received the Grievance on July 24, 2018, and issued a Step One denial on August 6, 2018, which Plaintiff appealed the same day.  (See id. at 1.)  They

---

[2]  Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

[3]  The NC DPS provides a three-step administrative review process for inmate grievances.  See Kelly v. Lewis, No. 1:12cv1385, 2017 WL 354267, at *4 (M.D.N.C. Jan. 24, 2017); see generally State of North Carolina Department of Public Safety Prisons, Policy & Procedures, Administrative Remedy Procedure, https://www.doc.state.nc.us/dop/policy_procedure_manual/g300.pdf (last visited Oct. 9, 2019).

further reflect that NC DPS issued a Step Two denial on August 23, 2018, which Plaintiff appealed the next day. (See id. at 2.)

On or about August 27, 2018, Plaintiff submitted the Complaint (see Docket Entry 1-2 at 1),[4] which bears a file-stamp of August 30, 2018 (see Docket Entry 1 at 1).[5] Thereafter, Defendants filed an Answer (see Docket Entry 16), which they subsequently amended (see Docket Entry 17). Both the Answer and Amended Answer assert that, "[o]n the face of Plaintiff's Complaint, it is clear that Plaintiff has failed to exhaust all remedies for the claims he has brought against the [d]efendants he has named. It is Defendants' intention to bring a motion for judgment on the pleadings on this issue . . . ." (Docket Entry 16 at 2; Docket Entry 17 at 2.) Defendants subsequently moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Rules"), on the grounds that "Plaintiff's claims are barred for failure to exhaust his administrative remedies prior to filing suit." (Docket Entry 18 at 1.)

---

4 Plaintiff did not date the Complaint (see Docket Entry 1 at 10), but he did date the accompanying Application to Proceed in District Court without Prepaying Fees or Costs (see Docket Entry 2 at 2) and the submission envelope (see Docket Entry 1-2 at 1). These items bear the date of August 27, 2018. (See id.; Docket Entry 2 at 2.)

5 Plaintiff filed his Complaint with the United States District Court for the Eastern District of North Carolina (see Docket Entry 1 at 1), which transferred this action to this Court on September 12, 2018 (see Docket Entry 4 at 1-2).

In support of their Motion, Defendants submitted the Grievance and the NC DPS's Step One, Step Two, and Step Three responses to the Grievance. (Docket Entry 20-1 (the "Exhibits") at 2-5.) The Exhibits reflect that, through Inmate Grievance Examiner Wakenda Greene, the NC DPS denied the Grievance at Step Three on September 6, 2018. (See id. at 5 ("The [G]rievance is considered resolved by prison staff and is, therefore, dismissed.").) In response to Defendants' Motion, Plaintiff requests that the Court "read the exhausted Step Three remedy [to the] Grievance," which "was exhausted on 9-6[-]2018." (Docket Entry 22 at 3.) Plaintiff elaborates that, "[o]n September 6th 2018[, he] exhausted to Step Three [the] Grievance," noting that "the name of the [relevant] Grievance Examiner is[] Wakenda Greene." (Id. at 2.) Plaintiff further "moves to enter the [exhausted Grievance into] evidence," asserting that "it would be in the interest of justice to grant [him leave] to proceed to trial in this case." (Id.)

## DISCUSSION

### I. Relevant Rules

"[A] party may move for judgment on the pleadings" pursuant to Rule 12(c) any time "[a]fter the pleadings are closed," as long as it moves "early enough not to delay trial." Fed. R. Civ. P. 12(c). In evaluating a Rule 12(c) motion, the Court considers only the pleadings, (I) taking all factual allegations in the Complaint as true, (ii) taking all factual allegations in the answer "as true

4

only where and to the extent they have not been denied or do not conflict with the [C]omplaint," and (iii) drawing all reasonable inferences in favor of the nonmoving party. Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (internal quotation marks omitted). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985). In other words, "a Rule 12(c) motion tests only the sufficiency of the [C]omplaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (internal quotation marks omitted).

As such, if "matters outside the pleadings are presented to and not excluded by the [C]ourt, the [Rule 12(c)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In turn, under Rule 56, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Moreover,

> [w]here, as here, the movant seeks summary judgment on an affirmative defense, [he] must conclusively establish all essential elements of that defense. When the defendant has produced sufficient evidence in support of [hi]s affirmative defense, the burden of production shifts to the plaintiff to come forward with specific facts showing that there is a genuine issue for trial.

Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (citation and internal quotation marks omitted).

## II. Exhaustion Requirement

As relevant here, the Prison Litigation Reform Act of 1995, as amended (the "PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The defendant bears the burden of establishing that a prisoner failed to exhaust administrative remedies. See Jones v. Bock, 549

6

U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Nevertheless, the "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015) ("[A]ll . . . of the circuits that have considered the issue agree that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." (internal quotation marks omitted)). A prisoner satisfies the PLRA exhaustion requirement when he "ha[s] utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Thus, the relevant prison's grievance procedures determine the steps that a prisoner must take to meet his exhaustion obligations. See id. at 726.

The NC DPS provides a three-part Administrative Remedy Procedure (the "ARP") for inmate grievances. See generally State of North Carolina Department of Public Safety Prisons, Policy & Procedures, Administrative Remedy Procedure, https://www.doc.state.nc.us/dop/policy_procedure_manual/g300.pdf

7

(last visited Oct. 9, 2019).[6] The ARP provides that, "[f]rom filing to final disposition, all grievances shall be processed within ninety (90) days." ARP, Ch. G, Section .0307(a). To meet this objective, the ARP imposes certain time restrictions on the processing of inmate grievances. See generally ARP, Ch. G, Section .0307. For instance, at Step One and Step Two, the NC DPS must provide its formal written response within, respectively, (I) 15 days of accepting the grievance and (ii) 20 days of the request for Step Two review. ARP, Ch. G, Section .0307(f)(1)-(2). In addition, the Inmate Grievance Examiner must forward within 20 days any Step Two appeal to the Secretary of Public Safety, who must make a final Step Three determination within 30 days of receiving such appeal. ARP, Ch. G, Section .0307(f)(3)-(4). Moreover, "[i]f at any level of the [ARP], including the final level, the inmate does not receive a response within the time provided for reply, including any properly noticed extension, the absence of a response shall be a denial at that level which the inmate may appeal[] . . . ." ARP, Ch. G, Section .0307(f)(5).[7]

---

    6  The Court may take judicial notice of the relevant ARP, cited herein as "ARP, Ch. G, Section ____." See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (observing that the Court "may properly take judicial notice of matters of public record"); see also Massey, 759 F.3d at 347 (confirming that courts may consider "matters of public record" in resolving motions under Rule 12(c)).

    7  "Prisons may grant an extension of time to respond for up to 70 days, if the normal time period for response is insufficient
(continued...)

8

**III. Analysis**

As a preliminary matter, Defendants rely on Exhibits outside the pleadings in support of their Motion. (Compare Docket Entries 1 to 1-2, 16, 17, with Docket Entry 20-1.) Accordingly, their Motion more properly constitutes a request for summary judgment than for judgment on the pleadings. See Fed. R. Civ. P. 12(d). The distinction between Rule 12© and Rule 56 motions has little bearing on the outcome of this case, however, because all parties agree on the relevant facts (see, e.g., Docket Entry 22 at 1-3; Docket Entry 19 at 8). In this regard, the record reflects the following undisputed facts:

In July 2018, Plaintiff initiated his Grievance, which proceeded through Step One and Step Two of the NC DPS ARP by August 23, 2018. (See Docket Entry 1-1 at 1 to 2; see also Docket Entry 20-1 at 2 to 4.) On August 24, 2018, Plaintiff appealed the denial of his Grievance to Step Three. (See Docket Entry 1-1 at 2; Docket Entry 20-1 at 4.) On August 27, 2018, Plaintiff submitted his Complaint for filing (see Docket Entry 1-2 at 1; see also Docket Entry 22 at 1 ("I Tracey Grady on August 27[,] 2018[,] filed the above case pursuant to 42 U.S.C. §1983[.] . . .")), which the Clerk docketed on August 30, 2018 (see Docket Entry 1 at 1). Shortly

---

7(...continued)
to make an appropriate decision," but must "notify the inmate in writing of any such extension and provide a date by which a decision will be made." ARP, Ch. G, Section .0307(f)(6).

thereafter, on September 6, 2018, the NC DPS completed its Step Three review of Plaintiff's Grievance. (See Docket Entry 20-1 at 5; see also Docket Entry 22 at 2.) Accordingly, "on September 6th 2018[, Plaintiff fully] exhausted [his] Grievance." (Docket Entry 22 at 2; see also Docket Entry 20-1 at 5.)

"The Courts of Appeals for the First, Second, Third, [Sixth,] Seventh, Tenth, Eleventh, and D.C. circuits have held that § 1997e(a) requires exhaustion before the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also id. at 1199-1201 (collecting cases and adopting same rule). By unpublished opinion the United States Court of Appeals for the Fourth Circuit recently endorsed the same rule. See Germain v. Shearin, 653 F. App'x 231, 234 (4th Cir. 2016) ("Germain I") ("Exhaustion has not occurred [under the PLRA] and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint." (citing, inter alia, McKinney, 311 F.3d at 1199)); see also Germain v. Shearin, 725 F. App'x 225, 226 (4th Cir. 2018) ("Germain II") ("[In Germain I, the Fourth Circuit affirmed as modified the] "grant[ of] summary judgment to [the defendant] after concluding that [the plaintiff] failed to exhaust his claims prior to initiating his lawsuit. Because [the plaintiff's] administrative grievance appeared to be

10

pending when he filed his complaint, [the Fourth Circuit] concluded that the complaint should have been dismissed without prejudice for failure to exhaust administrative remedies.").

Admittedly, in circumstances such as this case, "requiring dismissal may[ well] occasion the expenditure of additional resources on the part of the parties and the court, [but] it seems apparent that Congress has made a policy judgment that this concern is outweighed by the advantages of requiring exhaustion prior to the filing of suit." McKinney, 311 F.3d at 1200. As the United States Supreme Court explained,

> Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter, 534 U.S. at 524-25 (citations omitted). "Requiring dismissal without prejudice when there is no presuit exhaustion provides a strong incentive that will further these Congressional objectives," whereas permitting exhausting during the course of litigation "will inevitably undermine" those objectives. McKinney, 311 F.3d at 1200-01.

11

Because Plaintiff exhausted his Grievance on September 6, 2018, but filed this lawsuit in August 2018, he "failed to exhaust his claims prior to initiating this suit. Given that [Plaintiff] failed to . . . exhaust his claims [prior to filing], dismissal is mandatory. However, dismissal is without prejudice to his right to refile [now that] exhaustion [has] become complete." Germain I, 653 F. App'x at 234-35; see also Germain II, 725 F. App'x at 226 (explaining that, in Germain I, the Fourth Circuit "noted that [the plaintiff] could refile his complaint should exhaustion become complete").

Accordingly, the Court should grant the Motion and dismiss without prejudice Plaintiff's Complaint for failure to exhaust administrative remedies. See Germain I, 653 F. App'x at 234-35.

## CONCLUSION

Plaintiff commenced this action before completing Step Three review of his Grievance.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 18) be granted and this action be dismissed without prejudice for failure to exhaust administrative remedies.

This 9th day of October, 2019.

                                             /s/ L. Patrick Auld
                                                  **L. Patrick Auld**
                              **United States Magistrate Judge**